IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>NICK L. MEDEIROS, and<br>BOBBY GREAVES,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Cr. No. 18-1966-JCH |

THE UNITED STATES' MOTION TO EXCLUDE IRRELEVANT WITNESSES, OR IN THE ALTERNATIVE FOR A *DAUBERT* HEARING

The United States is in receipt of defendant Nick Medeiros and defendant Bobby Greaves ("Defendants")' notice of intention to offer expert testimony, Doc. 92. The United States requests the Court exclude the testimony of each defense witness listed in a pretrial order. The United States makes this request with respect to each of proffered defense witnesses because the testimony Defendants seek to adduce from them is irrelevant to the current charges, per Federal Rule of Evidence 401 and 402 (or, if marginally relevant, significantly more confusing and a waste of time than probative per Federal Rule of Evidence 403), and additionally with respect to attorneys John Dulske, Elizabeth Conally, and Kelly Foster because their proposed testimony invades the province of the Court to instruct the jury on the law. In the alternative, the United States moves for an order granting a hearing under *Daubert v. Merrill Dow Pharmecuticals*, 509 U.S. 579 (1993), to examine the methodology and proposed testimony of each of the three listed defense witnesses.

I. Background.

As the Court has analyzed in its prior opinions and orders at Docs. 82 and 83, Defendants are charged with conspiracy, fraud, and related specific misrepresentations to federal agencies in order to obtain valuable contracts through the Service-Disabled Veteran-Owned Small Business Program ("SDVOSB"), which is a source of potentially-lucrative federal contracts. The government alleges that Defendants "misrepresented the relationship between their small businesses, - JSR, Inc. and NJM, Inc. – "in order to obtain and maintain federal contracts." Doc. 78, p. 2. While the introduction section of the superseding indictment broadly describes Defendants' participation in federal contracting, Counts 1, 3 and 4 of the superseding indictment describe very specific misrepresentations made to the federal government. Doc. 66. Count 2 alleges fraud more generally as to one specific contract, Air Force contract FA4855-12-C-0016. *Id*. at 10.

II. Legal Standards.

Evidence is relevant if it has any tendency to make a material fact more or less probable than it would be without the evidence. *See*. Federal Rule of Evidence 401. If evidence is not relevant, it is not admissible. *See*. Federal Rule of Evidence 402. "Relevant evidence is not confined to that which directly establishes an element of the crime." *United States v. Gonzalez,* 110 F.3d 936, 941 (2nd Cir. 1997). Instead, to be relevant, "evidence need only tend to prove the [proponent]'s case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency." *Id*.

But even relevant evidence can (and should) be excluded if "its probative value is substantially outweighed by a danger of… unfair prejudice, confusing the issues, misleading the

jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Federal Rule of Evidence 403. Whatever prejudice stems from the relevant testimony can be moderated by cautionary instructions from the Court at the time of the admission of the evidence and, if requested, again in the final charge to the jury at the close of the case. *United States v. Record*, 873 F.2d 1363, 1376 (10th Cir. 1989).

When a witness is offered as a potential expert, a determination must be made as to whether the proposed testimony relates to scientific, technical, or specialized knowledge and whether that testimony will assist the trier of fact in understanding a fact in issue. *Goebel v. Denver and Rio Grande Western R.R. Co.*, 2015 F.3d 1083, 1087 (10th Cir. 2000). The trial court is required to assess the reasoning and methodology underlying opinions on these matters and determine its validity. *Id.* The testimony must have a reliable foundation and be relevant to the task at hand. *Id.* If a proposed expert is scientific, the proposed testimony must satisfy a four-part test, through which the trial court must assess 1) whether the proffered theory can and has been tested, 2) whether the expert's opinion has been subject to peer review, 3) the known or potential rate of error, and 4) the general acceptance of a methodology in the relevant scientific community. *United States v. Garza*, 566 F.3d 1194, 1199 (10th Cir. 2009) (citing *Daubert*, 509 U.S. at 593-94).

III. Leo Munoz Should Be Excluded as Irrelevant or Per Rule 403.

The first proposed defense expert witness is Leo Munoz. Doc. 92, pp. 1-2. Leo Munoz is an accountant who would testify that 1) the shuffling of personal money through several intermediaries to provide Nick Medeiros with his start-up capital is permitted by IRS regulations, 2) small business owners routinely get start-up capital through family and friends, 3) if NJM, Inc. and JSR, Inc. had an oral employee-leasing agreement, that hypothetical leasing agreement would

not violate accounting rules, and 4) from an accounting perspective, NJM, Inc. performed 15% of the "work" on the contracts listed in the indictment. *Id*.

The United States has interviewed Mr. Munoz. He disclaimed any participation in the acts alleged in the indictment, and made his analysis based on his accounting knowledge and information provided to him by defense counsel. As far as the United States can tell, each of his four major conclusions is correct, from an accounting perspective, and irrelevant to the material facts at issue in this case. Defendants are not charged with violating IRS rules – this is not a tax case and the United States urges the Court not to let it become a tax case through a mini-trial about whether each money-shuffling act undertaken by Defendants violated tax rules. To Mr. Munoz' first conclusion, Nick Medeiros obtaining his start-up capital from Bobby and Nancy Greaves, funneled through numerous other family members, is not interesting (or criminally relevant) because it violated an IRS regulation. It is interesting and criminally relevant because of the numerous representations Nick Medeiros made to the federal government that NJM, Inc. stands on its own and does not rely on JSR, Inc. to complete contracts (or for its existence in the first instance, through its start-up capital coming exclusively from JSR, Inc.'s owning couple).

To Mr. Munoz' second opinion, that small business owners routinely stand up their business through donations/investments from family and friends, Mr. Munoz did not remember a single previous time in his life when he observed or reviewed a business that obtained 100% of its start-up capital from a single business-owning couple, then turned around and told the federal government that it was entirely independent of that couple's business. Again, the relevance of the start-up capital evidence is not its adherence to or violation of accounting guidelines, about which Mr. Munoz is a proposed expert, but the alleged dishonesty with which Defendants made their charged representations to the United States and its executive-branch agencies.

Mr. Munoz' third opinion, that if an oral employee-leasing agreement existed between JSR, Inc. and NJM, Inc., it could potentially have had terms that are usual for the industry, is true but irrelevant. There is no contemporaneous evidence of an oral leasing agreement between JSR, Inc. and NJM, Inc. Defense counsel first brought up the idea at a meeting with government counsel in May of 2019. While the advisory committee notes to Federal Rule of Evidence 703 describe why asking expert witnesses hypothetical questions can be proper, all questions asked to adduce evidence from a witness must still satisfy Federal Rule of Evidence 402. Even if an oral leasing agreement did exist between the two companies during the times charged in the superseding indictment, its adherence to accounting protocols or the regularity of its terms in the industry is not relevant to the present criminal charges. None of those things make it more or less likely that Defendants intentionally misled the government when, in describing their relationship, they disclosed the written agreements between the two but did not disclose the (purported) oral employee-leasing agreement.

Mr. Munoz' fourth opinion, that, from an accounting perspective, NJM, Inc. performed 15% of the work on the contracts listed in the indictment, is likewise immaterial. Again, Defendants are not charged with accounting practice violations. Mr. Munoz has no basis to determine whether NJM's accounting records truthfully reflect what work NJM, Inc. performed independent of JSR or JSR employees. His review of those accounting records, which show NJM billing 15% of the contract money and only passing through 85% or less to JSR, is irrelevant.

Even if Mr. Munoz' accounting testimony on some of these four topics is potentially probative to the instant charges, that probative value is substantially outweighed by the confusion of the issues, misleading of the jury, and the waste of time it would require to adduce and cross-examine. In order to make sense of Mr. Munoz' testimony that Defendant's conduct did not

violate accounting practices or IRS regulations, the jury would need to hear what the relevant practices and regulations are, what conduct would violate them, and compare Defendant's conduct to conduct that would violate those practices. But one can violate accounting practices and faithfully describe that violative conduct to the government, thereby not misleading the government. And, one can adhere to accounting practices and mislead the government in describing that adhering conduct.

The United States has interviewed Rita Jordan, defendant Bobby Greaves' sister and the in-house accountant for JSR, Inc. during the charged period. The grand jury has not charged her with any crimes, and the superseding indictment contains no allegations of violations of accounting practices or IRS regulations (by her or anyone). Whether JSR, Inc. and NJM, Inc. adhered to or violated accounting practices or IRS regulations during the charged period is simply irrelevant to the criminal statutes invoked in this prosecution. The United States urges this Court not to take the extreme detour in time and energy that would be required to incorporate tax evidence and analysis into this case. If the Court is not prepared to exclude Mr. Munoz on the papers, the United States requests a *Daubert* hearing for the Court to examine and assess whether his accounting knowledge will be helpful to the jury in their review of the fact evidence in this case.

IV. Legal Experts John Dulske, Elizabeth Conally, and Kelly Foster Should Be Excluded as Irrelevant, Improper, and Intrusive to the Court's Duty to Instruct the Jury on the Law.

Defendants propose three legal experts, attorneys, to describe to the jury various ways in which they opine that Defendants did not break the law. This should not be permitted. First, as described above, evidence of statutes or regulations not violated is generally irrelevant to whether the charged statutes were in fact violated by Defendants' conduct. Second, each of the proposed scopes of testimony for the two proposed attorney witnesses would greatly expand the issues put

before the jury, thus wasting very significant amounts of time and energy in mini-trials about each regulation Defendant seeks to put at issue.

A. John Dulske.

Defendant's premise in proposing John Dulske as an expert witness is that "The indictment focuses on the following eleven contracts…." Doc. 92, p. 2. This is incorrect. The superseding indictment lists eleven contracts in its introduction. Doc. 66, p. 4. The superseding indictment's first count focuses on specific overt acts relating to the relationship between NJM, Inc. and JSR, Inc., and Defendants' representations to the government about that relationship. *Id*. at 7-10. Count 2 alleges major fraud as to a single contract. *Id*. at 10. Counts 3 and 4 allege specific false representations made to the government about the relationship between the two companies. *Id*.

Defendants' proposal of the relevant expertise of Mr. Dulske is further based on additional false premises. Defendants claim that NJM is charged with not performing a "significant" portion of the work, in violation of FAR 52.219-14. Doc. 92, p. 4. That is untrue. Defendants are charged with fraud, criminal misrepresentation, and conspiracy to commit the same. Doc. 66. FAR 52.219-14 is not at issue in this case. This is not a civil regulatory case. It would significantly and unnecessarily expand the scope of testimony and evidence presented to the jury to try to make it a FAR 52.219-14 case, and we should not do so. One may violate FAR 52.219-14 and be innocent of all the crimes actually charged in the superseding indictment here, and one may comply with FAR 52.219-14 and still commit all the crimes alleged. FAR 52.219-14 is simply not relevant here.

Mr. Dulske's next two proposed lines of analysis are that certain practices undertaken by NJM and JSR are not in and of themselves deceptive. Doc. 92 at 5-6. Mr. Dulske's legal knowledge adds nothing to that argument other than potentially brining up civil regulations not at

issue in this case. The question in this prosecution is, again, not whether NJM's conduct violated some civil regulation, but whether Defendants made the representations alleged to the federal government and whether those representations were intentionally misleading. The grand jury has not charged anyone here with wearing another company's hard hat. The grand jury has charged that Defendants told the federal government that NJM and JSR do not share facilities, equipment, or employees outside of specific written subcontracting agreements that had been disclosed to the government, and that that representation was intentionally false and misleading. The hard-hat deception is relevant to the charges actually before the Court, but the United States has no obligation to prove that each piece of evidence tending to show deception is also an independent violation of some statute or regulation. Mr. Dulske's proposed testimony about all the statutes and regulations Defendant's conduct *did not* violate is simply immaterial to the issues the jury will have to decide, and should therefore be excluded per Federal Rule of Evidence 402.

As with the proposed accounting testimony, the proposed testimony of Mr. Dulske also runs afoul of Rule 403. In order for his opinions about federal regulations and civil laws to provide meaningful assistance to the jury, the jury would need to learn those regulations, hear how Defendant's conduct did not violate those regulations, hear what conduct would violate those regulations, and assess the fact evidence in this case from that regulatory perspective. But this is not already a regulatory case, and making it a regulatory case would potentially add days to the time it takes to try. The risk of misleading the jury, confusing the issues, and wasting time is simply too great for any minimal probative value the Court assesses to exist in these proposed opinions.

Also importantly, to the extent that one purpose of presenting a legal expert witness is to inform the jury of the law, that purpose invades the province of the Court and its exclusive duty to

do so. *See* Tenth Circuit Criminal Pattern Jury Instruction 1.03. If Defendants want to submit supplemental jury instructions regarding civil statutes or regulations, they may do so, and the Court would not be limited in what argument or lawyer testimony it decides to assess in making its rulings on what it will instruct the jury in that regard. But this defense proposal effectively to put a special judge on the stand to instruct the jury on the law is improper.

For those reasons, the United States asks the Court to exclude Mr. Dulske's proposed testimony by pretrial order. If the Court is not inclined to do so on the briefings alone, the Untied States alternatively requests a pretrial *Daubert* hearing by which the Court might observe and assess the usefulness of this proposed testimony to the jury.

B. Elizabeth Conally.

Elizabeth Conally is an attorney in San Antonio, Texas who has worked for Defendants in the past. When the United States interviewed her, she quickly (and believably) disclaimed any involvement in the conduct, meaning the specific challenged representations, charged in the indictment. So one might expect that she is currently being proposed solely as a legal expert in government contracting. It appears, however, that her proposed opinion testimony is based on her personal involvement with Defendants during the charged time period, such as her proffered belief that NJM was "owned and controlled by Nick," such that he was not knowingly deceptive when he transmitted the various charged communications to the government. This proposed testimony is improper for a few reasons.

First, opinion testimony on the ultimate issue of a defendant's state of mind is improper. Federal Rule of Evidence 704(b). So if Ms. Conally had advised defendant Medeiros to make the charged representations, he might have an advice-of-counsel defense, but her opinion that he did not intend to deceive when he made those representations would still be impermissible evidence.

And whether the representations defendant Medeiros made are factually true or not is not a matter of opinion, but a matter of fact for the jury to decide.

Second, she did not advise defendant Medeiros to make those representations, she had no involvement in his making the representations, and all the representations she personally made to the federal government as Mr. Medeiros' lawyer she made believing them to be true. Ms. Conally specifically disclaimed knowledge of the alleged facts the government intends to prove in this case that reveal the un-truth of those statements. If she testifies at trial, she will be confronted with that evidence, and asked if it changes her assessment of the veracity of Defendants' statements to the government. Her answer will contain two aspects: her assessment as a regulatory expert, which is improper for all the reasons described above with respect to Mr. Dulske's proposed testimony, and her assessment as a regular person, which is entirely duplicative of the role of the jury and would not add anything to their ability to assess the fact evidence at trial.

Third, the defense should not be permitted to present the testimony of everyone who worked with Defendants during the charged time period so they can describe why they believe they did not knowingly participate in any crimes. The jury should be considering only the crimes charged, and only as to the defendants charged. *See* Tenth Circuit Criminal Pattern Jury Instruction 1.19. Of course Ms. Conally believes that the special status of NJM, Inc. that she helped defendant Medeiros obtain, was deserved, based on what she knew at the time. The grand jury has not charged her with any crimes, despite her participation in Defendants' businesses during the time period covered in the superseding indictment. If she participated in some wrongdoing, it appears that her participation was unknowing, and therefore innocent. But to allow a parade of witnesses who participated in challenged conduct but believe themselves

innocent, even if those witnesses are experts at their own jobs or career fields, would be a significant and unnecessary waste of time, and would confuse the issues and mislead the jury.

For those reasons, the United States asks the Court to exclude Ms. Conally's proposed testimony by pretrial order. If the Court is not inclined to do so on the briefings alone, the Untied States alternatively requests a pretrial *Daubert* hearing by which the Court might observe and assess the usefulness of this proposed testimony to the jury.

C. Kelly Foster

Ms. Foster is an attorney in San Antonio, Texas, who assisted both NJM, Inc. and JSR, Inc. with several of their business-organization-formation documents, and with several written agreements between the two companies. She is not charged with any wrongdoing. When she spoke to the United States, she quickly (and believably) disclaimed any participation in the specific charged conduct.

Like Ms. Conally, Ms. Foster is an attorney who worked with Defendants during the time periods charged, but who never heard of an oral employee-leasing agreement between the Defendants' two companies before the filing of the indictment in this case. Like Ms. Conally, she never advised Defendants to conceal from the government the true scope of their employee-sharing during the time period they were representing to the government that NJM, Inc. did not rely on JSR, Inc. to perform on contracts, or that NJM, Inc. did not share employees with JSR, Inc. except as per the limited written agreements and one six-hour job on a single day, *et cetera*. Like Ms. Conally, she did not alter R.R.'s resume to state falsely that he was an NJM employee before that falsified resume was submitted to the government, and she did not know who did. Like Ms. Conally, she is a professional who worked with Defendants and did her best within the scope of her employment.

Her opinion that the things in which she participated were not illegal as far as she understood the predicate facts is irrelevant. The jury will have to decide in this case whether Defendants, not Ms. Conally or Ms. Foster, deliberately misled the government in order to make money. The facts the jury will assess in doing so are not limited to what Ms. Foster knew. As with Ms. Conally, either her opinions about the true facts with which she would be confronted at trial are based on regulatory expertise, in which case they are immaterial and would represent an unwarranted mini-trial about regulations, or they are based on her assessment as a regular person, which would not add anything valuable to the jury's own regular-person analysis of the evidence.

The United States therefore respectfully requests the Court exclude Ms. Foster's testimony for the same reasons the United States has argued above with respect to Ms. Conally. If the Court is not prepared to do so on the briefing alone, the government alternatively requests a pretrial *Daubert* hearing at which the Court may take evidence and argument before making its decision.

V. Conclusion

For the above-stated reasons, the United States respectfully requests the Court exclude each of the four proffered defense expert witnesses by pretrial order or, in the alternative, set a hearing pursuant to *Daubert v. Merrill Dow Pharmecuticals*, 509 U.S. 579 (1993), to examine the methodology and proposed testimony of each of the three listed defense witnesses.

The filing of this motion in CM/ECF caused a copy to be served on Michael Gross, Esq., counsel for Nick Medeiros, and John Convery, Esq., counsel for Bobby Greaves, as well as on

the other attorneys on the defense teams in this case, whose opposition is presumed by the nature of the motion.

Respectfully submitted,

JOHN C. ANDERSON
United States Attorney

*Electronically filed October 14, 2020*
PAUL J. MYSLIWIEC
JONATHON M. GERSON
Assistant United States Attorneys
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 346-7274