IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cr. No. 18-1966-JCH |
| | ) | |
| NICK L. MEDEIROS, and | ) | |
| BOBBY GREAVES, | ) | |
| | ) | |
| Defendants. | ) | |

**UNITED STATES' MOTION *IN LIMINE* REGARDING EVIDENCE OR FORMS OF EVIDENCE NOT INTRODUCED IN THE GOVERNMENT'S CASE IN CHIEF IN THE FIRST TRIAL**

The United States respectfully moves this Court *in limine* for a ruling from the Court about admissibility at retrial of three categories of evidence: 1) the testimony/transcripts of the defense witnesses from the first trial, 2) the testimony/transcripts of the government witnesses from the first trial that are unavailable for the retrial, and 3) defendant Nick Medeiros' SDVOSB self-certification in sam.gov. As grounds, the United States argues:

I.  Defense witness testimony is admissible as definitional non-hearsay under Federal Rule of Evidence 801(d)(2).

During the first trial, both defendants testified. Their testimony is subject to admission against them at the retrial pursuant to Federal Rule of Evidence 801(d)(2)(A). They also called witnesses to testify on their behalf, and expressed agreement with the testimony of those witnesses, both personally and through their attorneys. Many of the endorsements can be found in Defendants' closing argument, thus:

John Dulske testified from the stand without any kind of witnesses calling to contradict what John said. John Dulske took the stand and said, Look, Weapons Cleaning and Drop Zone are self-certified contracts. And John looked at all of the documents that went in that NJM provided the AirForce for Weapons Cleaning and Drop. John Dulske said the day of the proposal is the day you certified to the Air Force, you self-certified that you meet ownership and control as an SDVOSB. It has nothing at all to do with the CVE and the SDVOSB from CVE. The Government wants to pull in CVE and SDVOSB on this, but you-all know, you-all know that Counts 1 through 4 deal with Drop Zone and Weapons Cleaning.

Trial Transcript Volume 7, March 2, 2022, pp. 105-06.

And you saw Kelly testify, you  heard Elizabeth Connally testify, without anybody else coming in and contradicting them, that Nick made it clear he wanted to start a company as an SDVOSB so he could get other former military, who might also be service-disabled veterans, but veterans also, so that he could get them into the company eventually and start working with them.

*Id*. at 108.

Now the Government suggests, oh, Nick didn't tell them this or that. NJM wasn't even in existence when he went to see Kelly Foster. Kelly is the one that helped him put it together. Nick told her this is what I want to do. He was fully candid with Elizabeth or with Kelly Foster, fully candid with her. And Kelly Foster put together all the documents for Nick. When one of them got bounced back by the VA and CVE, that is when Nick had Elizabeth Connally come in then and help out and Greg Huber, who wrote the teaming agreement, who made sure the servicing agreement was proper because everybody at the Gardner firm, and frankly everyone in the Air Force on the contracting officers, they knew Nick had a startup company with NJM. They knew he had no one, he had no money to hire anyone at that point. The Gardner firm knew that and that is why the Gardner firm put together that service agreement and that that teaming agreement as broadly as possible. Remember Kelly told you as broadly as possible because she knew Nick was going to be bidding on contracts with the Government and didn't have any employees. They wanted to make sure that Nick was able to use JSR and Bobby Greaves and Nancy Greaves to help make sure that Nick could perform the contracts.

*Id*. at 110-11.

Both John Dulske and Elizabeth Connally said not necessary. The Government is trying to claim there is no oral leasing agreement. How can you do that when Leo Munoz looked at all of the financials for JSR and NJM, said it is crystal clear, crystal clear that both NJM and JSR kept very, very close records on the work that JSR leased employees, did on Drop Zone and Cleaning.

*Id*. at 111.

The actual contract officers and why is that important? Because what John Dulske said. John Dulske said that contracting officer determined that on the day of the proposal by Nick and NJM, the day of the proposal, that Nick was certified SBA SDVOSB, not CVE but SBA SDVOSB. Why is that important? Because John Dulske told you without any contradiction whatsoever from the case agents who were here or anyone else, John Dulske said, you know what, that contracting officer on that day, if they have a problem with that setup, they know what a teaming agreement means. If they had a problem, they would make a size protest and they would make Nick Medeiros and NJM explain what is going on here. But like John Dulske said, the contracting officer who approved that proposal, who reviewed the proposal that day made no size protest whatsoever. That is because they agreed Nick Medeiros was SDVOSB certified under the SBA guidelines. Did you hear the Government call anybody to contradict John Dulske about that? No, no one whatsoever. And you can read it for yourself in Count 2 dealing with Drop Zone where the Government says Nick falsely certified himself as SDVOSB certified with the SBA. That is completely false, John Dulske said so. John Dulske made it very clear what is at issue with Weapons and Drop Zone.

*Id*. at 113-14.

How do we know it was a reasonable interpretation by Nick? Elizabeth Connally, Elizabeth Connally said to you-all from the stand without any rebuttal at all by the Government against her, no witnesses against her. She said, I told the Government that Nick did not share people, equipment, supplies, facilities, Nick didn't share it because he paid for it. Elizabeth Connally said she told the Government that. And that is what Nick relied upon when he answered that question.

*Id*. at 119.

You heard John Dulske and Elizabeth Connally say, look, the fact that NJM says we will provide it means that they can -- they can provide it with leased employees. And we know Leo Munoz clearly said it was leased employees. Did you hear anybody come up to the witness stand from the Government and say, you know what, we have looked at those financials that Leo Munoz looked at and we don't think they kept proper accounting records at the time that JSR leased employees spent on Drop Zone or Weapons, no, zero.

*Id*. at 120.

John Dulske and Elizabeth Connally said but where NJM says they will provide project manager, contract admin, QC, safety and superintendent, they can do that with employees leased from JSR.

*Id*. at 121.

3

Elizabeth Connally told them they did in that letter to the SBA. John Dulske and Elizabeth Connally said there is nothing wrong under the regulations for NJM to do work for JSR. There is nothing wrong under the regulations.

*Id*. at 129.

Do you recall that Kelly Foster testified about Nick and said that, Hey, it is my opinion about Nick and Bobby, it is my opinion that Nick, I know him well enough. I think Nick is truthful. He wouldn't lie. I think Nick is honest. He wouldn't steel or defraud anyone. And I think he is law abiding. I think his character traits for those, I said are they good or bad, she said outstanding. Why is that important, ladies and gentlemen? The character evidence for Nick and Bobby is crucial in a case like this, and here is why.

*Id*. at 131.

John Dulske testified, Elizabeth Connally testified, in fact, these are difficult regulations to get through and especially for Nick Medeiros who is not a lawyer.

*Id*. at 134.

it is crystal clear through John Dulske and Elizabeth Connally it had nothing to do with the price of tea in China whether or not that particular contract in Weapons was awarded, nothing.

*Id*. at 137.

You heard from Elizabeth and John Dulske it doesn't matter because whether Ramon Rico's resume said NJM or JSR, he still could have been safety on Weapons Cleaning.

*Id*.

And you heard from Leo Munoz that there was nothing illegal about the way those funds made it to Nick Medeiros for NJM, nothing illegal. The Government called nobody to rebut Leo Munoz's testimony about that. You can make that diagram try to look as horrible as you can. The bottom line it was with easily traceable funds with a check from one bank to another and Leo Munoz said it was legal in his CPA regulation field and Nick paid taxes on it. There is nothing improper about that startup capital whatsoever.

*Id*. at 139.

Leo Munoz has explained to you it is legal, it is not any kind of -- I have heard shuffling, funneling, structuring, all really negative terms for giving a gift. The actual accounting tax reality is that when Nick Medeiros got that money, it was his.

If he wanted to go to Vegas, he could have gone to Vegas. Whatever he wanted to do with it. He wanted to start a business.

*Id*. at 144.

You heard Kelly Foster talk about the character of these people, the reputation of these people. She actually talked about the reputation for Bobby Greaves and Nancy Greaves for giving back, okay?

*Id*.

You heard Leo Munoz talk about, by the way he has reviewed thousands of documents. He had a team Certified Public Accountants. He is also a certified fraud examiner, just like this man sitting here right, Agent Siegfried. He had a completely different take and a completely different opinion on what is at stake in those documents. Special Agent Siegfried doesn't even really talk about the same thing, but Leo Munoz said this gift, it is legal, it is fine. What all the accounting shows is a lease agreement, it is a lease agreement.

*Id*. at 148.

Elizabeth Hows Connally, former State Department contract officer, Air Force wife, gave you her history, was a lawyer at the Gardner firm then went out on her own, took particular care with Nick Medeiros because he is a service-connected disabled veteran. She told him if you pay for it, you don't share it. If you pay for it, it is not sharing, okay.

*Id*. at 152-53.

And without any rebuttal at all, John Dulske reviewed the CPARs for the two contracts at issue here and his testimony is they were outstanding, outstanding as taxpayers, as Americans.

*Id*. at 156. The testimony of the non-defendant defense witnesses is therefore also definitional non-hearsay pursuant to Federal Rule of Evidence 801(d)(2)(B). All of the defense testimony from the first trial is relevant to the charged conspiracy and each defendant's knowing participation in that conspiracy.

II.  Government witness testimony for a witness unavailable for the retrial is admissible as hearsay within an exception under Federal Rule of Evidence 804(b)(1).

The United States is not currently aware that any prosecution witnesses from the first trial will be unavailable to testify at the retrial. In the event that a prosecution witness from the first trial is unavailable to testify at the retrial, thereby meeting the definitions in Federal Rule of Evidence 804(a), their testimony at the first trial is admissible pursuant to Federal Rule of Evidence 804(b)(1) because it was made under oath and the attorneys for each of the defendants were given an opportunity (and had a similar motive) to cross-examine them. The testimony is also admissible because it is relevant to each of the defendants' knowing participation in the charged conspiracy.

III.  Mr. Medeiros' SDVOSB self-certification from sam.gov is admissible as definitional non-hearsay and additionally as a government record pursuant to Federal Rule of Evidence 803(6).

At the first trial, defense attorneys argued that the Court should grant a Rule 29 judgment of acquittal because the United States had not introduced into evidence Mr. Medeiros' self-certification as an SDVOSB through the government portal at sam.gov. *See* Transcript of Trial Volume 4, February 25, 2022 ("The United States, however, rested without offering evidence that defendants made such a certification regarding SDVOSB and SBA standards.")[1] So, the United States seeks to introduce that record into evidence for the retrial. The self-certification is a government record made in the normal course of sam.gov's non-law-enforcement business, so it satisfies the requirements of Federal Rule of Evidence 803(6). Additionally, it was submitted by Mr. Medeiros, so it is definitional non-hearsay per Federal Rule of Evidence 801(d)(2)(A).

_____

[1] The United States is aware that criticism was made with respect to Count 2, which is not going to be before the jury at the retrial.

And it is relevant to Mr. Medeiros' knowing and voluntary participation in the charged conspiracy.

For those reasons, the United States moves *in limine* for a Court order allowing each of those three categories to be admitted into evidence at the retrial. The United States respectfully requests a pretrial ruling in accordance with Federal Rule of Criminal Procedure 12(d). The defense opposes this motion.

Respectfully submitted,

ALEXANDER M.M. UBALLEZ
United States Attorney

*Filed electronically March 8, 2024*
PAUL J. MYSLIWIEC
Assistant United States Attorney
P.O. Box 607
Albuquerque, NM 87103
505-346-7274

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing document electronically through the CM/ECF system.  Pursuant to the CM/ECF Administrative Procedures Manual, §§ 1(a), 7(b)(2), such filing is the equivalent of service on parties of record.

*Electronically filed March 8, 2024*
PAUL J. MYSLIWIEC
Assistant United States Attorney